UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

TERRY CALLAHAN (#453106)                                        CIVIL ACTION

VERSUS

BURL CAIN, WARDEN                                               NO. 14-180-JWD-RLB

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on February 14, 2017.

_____
RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**TERRY CALLAHAN (#453106)**                                    **CIVIL ACTION**

**VERSUS**

**BURL CAIN, WARDEN**                                          **NO. 14-180-JWD-RLB**

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The State has filed an opposition to the petitioner's application, and the petitioner has filed a response thereto.  Pursuant to a subsequent Order of the Court dated June 2, 2015 (R. Doc. 12), the petitioner has filed a supplemental memorandum and documentation in support of his application (R. Doc. 15), and a prison administrator and the State have provided supplemental documentation pertinent thereto. (R. Docs. 16 and 17).

The petitioner, Terry Callahan, challenges his conviction, entered in 2003 in the Nineteenth Judicial District for the Parish of East Baton Rouge, State of Louisiana, on one count of second degree murder.  He contends that he was provided with ineffective assistance of counsel when his trial counsel failed to adequately advise him regarding a plea offered by the State during jury deliberations.

### Factual Background

The facts, as provided in the decision of the Louisiana First Circuit Court of Appeal and found by the trial jury, are as follows:  On August 6, 2002, a vehicle that the petitioner was riding in was struck by gunfire, which caused the glass in the vehicle shatter and cut the petitioner.  Thereafter, the petitioner went to a family member's home, entered and then exited a

short while later and got in the driver's seat of the vehicle. After leaving the family member's home, the petitioner drove around East Baton Rouge Parish looking for the victim, Kevin Brand. The petitioner unsuccessfully pursued the victim, lost him, and continued to drive around until re relocated the victim at his home on Fourteenth Street, where he shot the victim multiple times. Kevin Brand later died from his wounds. *State v. Callahan*, 04-1371 (La. App. 1 Cir. 3/24/05), 898 So.2d 635 (Table).

## Procedural Background

The petitioner was indicted by a grand jury on the charge of second degree murder and, after a trial by jury, was found guilty as charged. Upon the denial of post-trial motions, he was sentenced to life imprisonment at hard labor, without the benefit of probation, parole or suspension of sentence.

Through counsel, the petitioner filed a timely appeal before the Louisiana Court of Appeal for the First Circuit, asserting as error (1) that the evidence was insufficient to support the conviction, and (2) that his trial counsel was ineffective for failing to object to hearsay testimony. On March 24, 2005, the intermediate state appellate court affirmed the conviction and sentence. *Id.* The petitioner sought further review in the Louisiana Supreme Court, which denied review on January 13, 2006. *See State v. Callahan*, 05-1449 (La. 1/13/06), 920 So.2d 234.

According to the petitioner, he thereafter forwarded, on or about December 29, 2006, an application for post-conviction relief to the Clerk of Court for the Nineteenth Judicial District Court. According to the records of that court, however, the application was never received.[1] The

---

[1] In light of the fact that the petitioner's application for post-conviction relief was never received by the trial court, this Court requested supplemental briefing and supplemental documentation from the petitioner, the petitioner's place of confinement, and the district attorney, *see* R. Doc. 12, seeking to determine whether and, if so, when the petitioner submitted his application for mailing to the Nineteenth Judicial District Court and/or the district attorney.

petitioner asserts that he inquired with the Clerk of Court via letter, every 90 to 120 days, regarding the status of his application for post-conviction relief. After receiving no response, he then re-submitted his application to the trial court, on or about January 10, 2008.[2]

After an evidentiary hearing in the state trial court, the petitioner's application was denied on January 25, 2013. The petitioner thereafter sought further review before the Louisiana appellate courts and, on July 15, 2013, and March 21, 2014, respectively, the state courts denied further review. *See State ex rel. Callahan v. State*, 13-1964 (La. 3/21/14), 135 So.3d 612.

Finally, on or about March 25, 2014, the petitioner filed the instant habeas corpus application in this Court. The State contends that the petitioner's application in this Court is untimely. There is no need for oral argument or for an evidentiary hearing.

## Timeliness

Pursuant to 28 U.S.C. § 2244(d), there is a one-year statute of limitations applicable to federal habeas corpus claims brought by prisoners in state custody. This limitations period begins to run on the date upon which the judgment becomes final through the conclusion of direct review or through the expiration of time for seeking such review. 28 U.S.C. § 2244(d)(1)(A). If a petitioner stops the direct appeal process before she has proceeded through all available state courts, "the conviction becomes final when the time for seeking further direct

---

The Court's findings and conclusions in this case are based upon a review of both the parties' submissions and the supplemental documentation submitted.

[2] Although the petitioner's application for post-conviction relief was docketed as filed in the state trial court on January 28, 2008, the United States Court of Appeals for the Fifth Circuit has instructed that federal habeas courts within the State of Louisiana must apply Louisiana's "mailbox rule" when determining the filing date of a petitioner's state court filings. Accordingly, pleadings submitted by a habeas petitioner are considered to be "filed" in state court as of the moment that the prisoner places them in the prison mail system for submission to the court, not on the date that the pleadings are ultimately docketed by the receiving court. *See Causey v. Cain*, 450 F.3d 601, 607 (5th Cir. 2006); *Lane v. Rogers*, 2012 WL 3160034, *1 n. 3 (E.D. La. June 21, 2012). Thus, inasmuch as the petitioner apparently signed his application for post-conviction relief on January 10, 2008, and presumably gave it to prison officials for mailing on that date, the Court will utilize that date as the presumptive date of filing. In addition, in hereafter referencing the dates of filing of the petitioner's various pleadings in the state courts and in this Court, the Court will utilize the dates that the petitioner apparently signed his respective pleadings as the dates of filing thereof in the respective courts unless otherwise noted.

review in the state court expires." *See Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003). After a petitioner has proceeded through all stages of direct appellate review in the state courts, the period of direct review also includes the petitioner's right to seek discretionary review before the United States Supreme Court. As a result, after a ruling by the state's highest court on direct appeal, a petitioner's judgment becomes final when the United States Supreme Court issues a decision denying (usually) discretionary review or, if no application for review is made, upon the conclusion of the 90-day time period for seeking such review. *See id.*

Upon the finality of a petitioner's conviction, the one-year limitations period for filing a federal habeas corpus petition commences to run. The federal limitations statute provides, however, that the time during which a subsequent "properly filed" application for state post-conviction or other collateral review is thereafter "pending" in the state courts with respect to the pertinent judgment or claim shall not be counted toward any part of the one-year limitations period. 28 U.S.C. § 2244(d)(2). As a corollary to this rule, any time during which there are no properly filed post-conviction or collateral review proceedings pending before the state courts does count toward the passage of the one-year period. To be considered "properly filed" for purposes of § 2244(d)(2), an application's delivery and acceptance must be in compliance with the applicable laws and rules governing filings. *Pace v. DiGuglielmo*, 544 U.S. 408, 413 (2005), *citing Artuz v. Bennett*, 531 U.S. 4, 8 (2000). A state post-conviction relief application is considered to be "pending" (1) while it is before a state court for review and also (2) during the interval of time after a lower state court's disposition of an application (thirty days in the State of Louisiana, unless an allowable extension is granted) while the petitioner is procedurally authorized by state law to file a timely application for further appellate review at the next level of state consideration. *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001).

In the instant case, the State asserts that the petitioner's conviction became final on April 13, 2006, ninety days after the decision of the Louisiana Supreme Court on January 13, 2006. *See State v. Callahan, supra*, 920 So.2d 234. The State further contends that the petitioner did not file an application for post-conviction relief until January of 2008. Based upon this assertion, the State contends that the one-year limitations period elapsed during the intervening period and that the petitioner's habeas corpus application in this Court is untimely.

In response to the State's assertion, the petitioner contends that he did in fact submit an application for post-conviction relief to prison officials for mailing to the trial court on December 29, 2006. He contends that pursuant to the "prison mailbox rule," his application should therefore be deemed to have been filed on that date. The trial court never received or docketed the application, and the district attorney also did not receive a copy. The petitioner asserts that he forwarded correspondence to the Clerk of Court every 90 to 120 days to inquire as to the status of his application. After he did not receive a response, the petitioner asserts that he then re-submitted his application to the trial court in February of 2008, though his pleadings reflect that the application was forwarded in January of 2008. The petitioner contends that, as a result, his conviction did not become final until March 21, 2014 when the Louisiana Supreme Court denied review. Accordingly, he asserts that his federal habeas corpus application submitted thereafter, disregarding the time that his subsequent post-conviction review proceedings were pending before the state courts, is timely. Ultimately, as discussed hereafter, this Court accepts the petitioner's contentions relative to the timeliness of his federal application before this Court.

The seminal case in this Circuit on the current issue is *Stoot v. Cain*, 570 F.3d 669, 671 (5th Cir. 2009). In *Stoot*, the Court addressed the prison mailbox rule and reiterated that a habeas corpus application is deemed to be filed when it is handed over to prison officials for mailing to a

court. The Court then addressed the effect that is given to a prisoner's pleading that is properly submitted to prison officials for mailing but, for unknown reasons, is never received or docketed by the addressee court. Under these circumstances, the Court concluded that an extension of the "federal prison mailbox rule" was appropriate and determined that a prisoner's state habeas pleading should be deemed filed on the date that the prisoner properly submits same to prison officials to be mailed, "regardless of whether the pleading actually reaches the court." *Id.* at 672. The Court cautioned, however, that "[u]nder such a rule, it is of course incumbent upon the petitioner to diligently pursue [the] petition...[and a] failure to inquire about a lost petition is strong evidence that the petition was, in fact, never sent." *Id.* In *Stoot*, the Court did not address the level of proof required to establish that a petitioner's pleading has been timely submitted for mailing to a court through the prison mailing system but, instead, remanded the matter to the lower court for an appropriate factual finding, noting that a "reference to prison mail logs usually answers the question of when the petition was actually mailed." *Id.* The *Stoot* Court further noted that the petitioner in that case had attached a copy of an Inmate Request for Legal/Indigent Mail that supported the inmate's assertions regarding the date of mailing. Finally, the Court stated that "[i]f the district court finds that Stoot submitted a petition, even one that was never received, ... then his Louisiana Supreme Court petition was timely, his federal application is not [time-]barred, ... and his habeas claims must be considered on the merits." *Id.*

Subsequent to *Stoot, supra*, courts have looked to various materials and documentation in seeking to determine whether a habeas petitioner has sufficiently established that pleadings were properly and timely submitted for mailing to an addressee court, notwithstanding that the court ultimately did not receive them. In cases where the courts have found the showing to be sufficient, the courts have looked to prison mail logs, copies of inmates' requests for legal or

indigent mail, date-stamps on court records, postal receipts reflecting mailings on the date in question, and certified mail receipt forms. *See Lewis v. Cain,* 2009 WL 3367055 at *2 (E.D. La. Oct. 16, 2009) (prison postal receipt); *Major v. Cain*, 2010 WL 2518969 at *2 n.2 (M.D. La. Apr. 6, 2010) (date-stamp); *Griffin v. Cain,* 2010 WL 2522991 at *2 (E.D. La. May 11, 2010) (certified mail receipt); *Chenevert v. Cain*, 2012 WL 5054729 at *7 (E.D. La. Aug. 22, 2012) (indigent mail request).  In addition, the courts have noted that affidavits and/or sworn attestations executed by inmates under penalty of perjury in accordance with 28 U.S.C. § 1746 may be considered if warranted.  *See Mitchell v. Warden, Louisiana State Penitentiary,* 2014 WL 7178984 at *2-3 (W.D. La. Dec. 16, 2014); and *Hills v. Cain*, 2015 WL 1004197 at *2-3 (M.D. La. March 6, 2015).  When such documentary evidence is lacking, however, courts have generally concluded that the inmate has failed to make the necessary showing.  *See Fruga v. Andrews*, 2011 WL 6000836 at *4 (E.D. La. Aug. 16, 2011); and *Williams v. Cain,* 2014 WL 43743336 at *4-5 (E.D. La. Sept. 3, 2014).

In the instant case, the documentation submitted by the petitioner and the prison shows that two articles of mail were picked up by Classification Officers on December 29, 2006.  One article was addressed to "Doug Moreau, DA," and the other article was addressed to "Hon. Doug Welborn, Clerk of Court."  On January 3, 2007, the petitioner's account was debited for postage in the amount of $1.74, and the mailroom mailed the petitioner's "indigent legal mail" on that date.  The petitioner has not submitted a copy of the application for post-conviction relief he alleges to have submitted for mailing on December 29, 2006, and no document in the record identifies what documents were mailed on January 3, 2007.  Nevertheless, despite the small amount of postage and the lack of any information identifying the documents mailed, there is nothing in the record which conclusively contradicts the plaintiff's assertion that he mailed his

initial application for post-conviction relief on December 29, 2006.  As such, the petitioner's instant application is considered timely and the Court will now address the merits of the same.

## Standard of Review

The standard of review in this Court is that set forth in 28 U.S.C. § 2254(d).  Pursuant to that statute, an application for a writ of habeas corpus shall not be granted with respect to any claim that a state court has adjudicated on the merits unless the adjudication has "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  Relief is authorized if a state court has arrived at a conclusion contrary to that reached by the Supreme Court on a question of law or if the state court has decided a case differently than the Supreme Court on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

Relief is also available if the state court has identified the correct legal principle but has unreasonably applied that principle to the facts of the petitioner's case or has reached a decision based on an unreasonable factual determination.  *See Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000).  Mere error by the state court or mere disagreement on the part of this Court with the state court determination is not enough; the standard is one of objective reasonableness.  *Id*. *See also Williams v. Taylor*, *supra*, 529 U.S. at 409 ("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable").  State court determinations of underlying factual issues are presumed to be correct, and the petitioner has the burden to rebut that presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

The State contends that, applying this standard to the petitioner's claims, there is no basis for the granting of habeas relief.

**Substantive Review**

The petitioner asserts his trial counsel advice with respect to the plea offer of ten years fell below the standard of adequate assistance of counsel guaranteed by the Sixth Amendment. A habeas petitioner who asserts that he was provided with ineffective assistance of counsel must affirmatively demonstrate (1) that his counsel's performance was "deficient", *i.e.*, that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment; and (2) that the deficient performance prejudiced his defense, *i.e.*, that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial in which the result is reliable. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The petitioner must make both showings in order to obtain habeas relief based upon the alleged ineffective assistance of counsel. *Id*.

To satisfy the deficiency prong of the *Strickland* standard, the petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards. *See,* e.g*., Martin v. McCotter*, 796 F.2d 813, 816 (5th Cir. 1986). The reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence and that, under the circumstances, the challenged action might be considered sound trial strategy. *See,* e.g., *Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988). This Court, therefore, must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial. *Martin v. McCotter*, *supra*, 796 F.2d at 817. Great deference is

given to counsel's exercise of professional judgment. *Bridge v. Lynaugh*, *supra*, 838 F.2d at 773; *Martin v. McCotter*, *supra*, 796 F.2d at 816.

If the petitioner satisfies the first prong of the *Strickland* test, his petition nonetheless must affirmatively demonstrate prejudice resulting from the alleged errors. *Earvin v. Lynaugh*, 860 F.2d 623, 627 (5th Cir. 1988). To satisfy the prejudice prong of the *Strickland* test, it is not sufficient for the petitioner to show that the alleged errors had some conceivable effect on the outcome of the proceeding. *Strickland v. Washington*, *supra*, 466 U.S. at 693. Rather, the petitioner must show a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. *Martin v. McCotter*, *supra*, 796 F.2d at 816. The habeas petitioner need not show that his counsel's alleged errors "more likely than not" altered the outcome of the case; he must instead show a probability that the errors are "sufficient to undermine confidence in the outcome." *Id*. at 816-17. Both the *Strickland* standard for ineffective assistance of counsel and the standard for federal habeas review of state court decisions under 28 U.S.C. § 2254(d)(1) are highly deferential, and when the two apply in tandem, the review by federal courts is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

"If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it. If that right is denied, prejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence." *Lafler v. Cooper,* 566 U.S. 156, 168 (2012). The Supreme Court has not defined the duties and responsibilities of defense counsel in the plea bargain process: "Bargaining is, by its nature, defined to a substantial degree by personal style. The alternative courses and tactics in negotiation are so individual that it may be neither prudent

nor practicable to try to elaborate or define detailed standards for the proper discharge of defense counsel's participation in the process." *Missouri v. Frye,* 566 U.S. 133, 145 (2012). The Court did note that codified standards of professional practice are important guides, which provide that "counsel shall promptly communicate and explain to the defendant all plea offers made by the prosecuting attorney." *Id.* at 1408, quoting ABA Standards for Criminal Justice, Pleas of Guilty 14–3.2(a) (3d ed. 1999).

In the instant matter, following an evidentiary hearing, the trial court concluded that the petitioner's trial counsel was not deficient in his assistance to the petitioner. At the evidentiary hearing, the petitioner's trial counsel testified that while the jury was deliberating, the district attorney made several plea offers beginning with a manslaughter plea for 30 years and ending with a manslaughter plea for ten years. With respect to the plea for ten years, the petitioner's trial counsel testified that he explained the difference between manslaughter and second degree murder to the petitioner, and that the petitioner could face a life sentence if convicted of second degree murder. The petitioner's trial counsel further testified that he explained to the petitioner that the case was "really risky," and although the petitioner felt his counsel had presented a good case and that there were weaknesses in the State's case, it was possible that the jury would find him guilty of second degree murder, though he did not quantify that possibility as a percentage. The petitioner's trial counsel additionally testified that he spoke with the petitioner at length regarding the offer of ten years, left the room so the petitioner could think about the offer, returned, and again spoke with the petitioner about the offer prior to notifying the district attorney that the petitioner had rejected the offer. Although the petitioner testified at the evidentiary hearing that his trial counsel did not offer any such advice, he now concedes in the instant petition that his trial counsel's testimony was accurate.

Based upon the testimony of the petitioner's trial counsel, it appears that the advice offered to the petitioner was within the range of competence demanded of counsel in a criminal case. As such, the trial court's conclusion that the petitioner failed to support this claim of ineffectiveness was reasonable.

## Certificate of Appealability

Should the petitioner pursue an appeal, a certificate of appealability should also be denied. An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although the petitioner has not yet filed a Notice of Appeal herein, the Court may address whether he would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). In cases where the Court has rejected a petitioner's constitutional claims on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of a denial of constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Ruiz v. Quarterman*, 460 F.3d 638, 642 (5th Cir. 2006) (emphasis in original). In the instant case, the Court finds that reasonable jurists would not debate the denial of the petitioner's § 2254 application or the correctness of the procedural ruling. Accordingly, it is appropriate that, in the event that the petitioner seeks to pursue an appeal in this case, a certificate of appealability should be denied.

**RECOMMENDATION**

It is recommended that the petitioner's application for habeas corpus relief be dismissed, with prejudice, as lacking merit. It is further recommended that, in the event that the petitioner seeks to pursue an appeal, a certificate of appealability be denied.

Signed in Baton Rouge, Louisiana, on February 14, 2017.

　　　　　　　　　　　　　　　　　　　　　　　　
　　　　　　　　　　　　　　　RICHARD L. BOURGEOIS, JR.
　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE